Filed 10/1/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JULIO NZOLAMESO<br><br>    Defendant and Appellant. | B292164<br>(Los Angeles County<br>Super. Ct. No. SA096190)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 17, 2019, be modified as follows:

On page 7, replace the last paragraph beginning with "*Birchfield* therefore prohibits," with the following paragraph:

*Birchfield* therefore prohibits a court from finding *implied* consent where an arrestee's only choice is to consent to a warrantless blood test or be prosecuted for refusing to do so. Any consent obtained by law enforcement cannot be *deemed* valid where the only choice is consent to the blood test or be punished criminally. Here, however, that was not Nzolameso's only choice. Under California's former implied consent law, Nzolameso was

given a choice of tests to choose from.  He was subject to criminal penalties only if he refused both the blood *and* breath test. Under *Birchfield*, the state of California was not insisting on only the more intrusive alternative of a blood test.  Instead, it offered motorists suspected of drunk driving a less intrusive alternative: a breath test.  And, even though the implied consent statute required Nzolameso to submit to only blood or breath testing on penalty of criminal penalty, the officers here also gave Nzolameso the option of a urine test, which he subsequently requested.[1] Nzolameso was not required to take the blood test or face criminal prosecution; he was required only to choose between alternative tests.  Only refusing all tests would have exposed him to criminal penalties under the law.  As the First District stated in *People v. Gutierrez* (2018) 27 Cal.App.5th 1155, review granted January 2, 2019, S252532 (*Gutierrez*), just because "the state cannot *compel* a warrantless blood test does not mean that it cannot *offer* one as an alternative to the breath test that it clearly

---

[1]     The former implied consent law stated that a motorist is deemed to have consented to a urine test on suspicion of driving under the influence of alcohol only if blood or breath testing is unavailable.  (Veh. Code, § 23612, former subds. (a)(1)(A) & (d)(2).))  Thus, under the law, Nzolameso would have faced criminal penalties for refusing a urine test only if blood and breath testing were unavailable.  Whether Nzolameso would have faced criminal penalties under the facts of this case if he had refused blood and breath, but submitted to urine testing, is immaterial because he gave actual consent to the blood *and* urine tests.

can compel." (*Id.* at p. 1161.)[2]  Hence, *Birchfield* does not prohibit a finding of implied consent under California's former law under these circumstances.

There is no change in the judgment.
Appellant's petition for rehearing is denied.

_____

BIGELOW, P. J.          GRIMES, J.          STRATTON, J.

---

[2]      Review was granted in *Gutierrez* on whether law enforcement violates the Fourth Amendment by taking a warrantless blood sample from an unconscious defendant, or can the defendant be deemed to have given implied consent under California's implied consent law?

Filed 9/17/19 (unmodified version)

# CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JULIO NZOLAMESO,<br><br>    Defendant and Appellant. | B292164<br><br>(Los Angeles County<br>Super. Ct. No. SA096190) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie C. Brenan and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

## INTRODUCTION

Police arrested appellant Julio Nzolameso for alleged drunk driving after he drove his car into a crowd of people and seriously injured four pedestrians. The arresting officers admonished Nzolameso that he was required to submit to either blood, urine, or breath testing and that refusal to submit to any testing at all would result in civil and criminal penalties. Nzolameso chose the blood test, which revealed a blood alcohol level above the legal limit.

Nzolameso moved to suppress the results of the blood test on the grounds that the blood testing was a warrantless search in violation of the Fourth Amendment. He also argued that his consent to the blood test was invalid because it was given under threat of criminal prosecution. The court denied the motion.

On appeal, Nzolameso relies on *Birchfield v. North Dakota* (2016) 579 U.S. \_\_\_, [136 S.Ct. 2160] (*Birchfield*) in support of his argument that his consent was illegal per se because it was given under threat of criminal prosecution. Because we disagree with Nzolameso's broad interpretation of *Birchfield* and agree Nzolameso's consent was freely and voluntarily given, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On a night in June 2017, Nzolameso drove his car into a crowd of pedestrians who were socializing in the parking lot of a club. After hitting several pedestrians, Nzolameso exited the parking lot, made a right-hand turn into heavy traffic, and crashed into a parked car. Nzolameso was immediately detained by Los Angeles Police Department Officers Ernest Fields and Samuel Kim, who transported Nzolameso to a hospital to ensure he was not injured. At the hospital, Officer Fields conducted field sobriety tests, which Nzolameso failed.

2

Officer Fields then placed Nzolameso under arrest and advised him of California's implied consent law as follows:

"You must submit to a blood test, urine test, breath test, or urine and breath test, per California Vehicle Code 23612. Failure to submit to or failure to complete required chemical testing will result in a fine, mandatory imprisonment if convicted of 23152 or 23153, and the suspension of your privilege to operate a motor vehicle for one year.

"[¶] . . . [¶]

"Breath test violation 23614 C.V.C. If you choose the breath test, the breath testing equipment does not retain any sample of the breath and no breath sample will be available after the first test, which could be analyzed later by any other person or yourself.

"Because no breath sample is retained, . . . you have the opportunity to provide a blood sample that will be retained at no cost to you. There will be something retained that may be subsequently analyzed for the alcohol content of your blood. And if you choose the blood or urine, your sample may be tested by either party in any criminal prosecution."

Nzolameso informed Officers Fields and Kim that he wanted a blood test. He also asked for a urine test. At no point did he withdraw his consent to either test. His urine and blood were taken by the nursing staff as the officers looked on. The nursing staff also took Nzolameso's consent to the blood test to satisfy its own ethical obligations. He was given a cup for the urine test and shown the toilet. He asked for water, which he received, and discussed the timing of the testing with the nursing

3

staff, ultimately telling the nurses exactly when he was ready to give urine and blood. Nzolameso's blood alcohol concentration was measured at 0.05 percent. Using retrograde extrapolation, the People's criminalist estimated Nzolameso's blood alcohol concentration was between 0.05 and 0.16 at the time of the collision.

Nzolameso was charged via information with six counts: driving under the influence (DUI) of alcohol causing great bodily injury within 10 years of two other DUI offenses (Veh. Code, §§ 23153, subd. (a) & 23566, subd. (b); count 1); DUI with a 0.08 percent blood alcohol content causing great bodily injury within 10 years of two other DUI offenses (Veh. Code, §§ 23153, subd. (b) & 23566, subd. (b); count 2); driving when privilege suspended or revoked for being a habitual offender (Veh. Code, § 14601.3, subd. (d)(2); count 3); driving when privilege suspended or revoked for driving under the influence conviction (Veh. Code, § 14601.2, subd. (a); count 4); driving a vehicle not equipped with an ignition interlock device when privilege restricted (Veh. Code, § 23247, subd. (e); count 5); and hit and run driving resulting in injury to another person (Veh. Code, § 20001, subd. (b)(1); count 6). Count 5 was later dismissed pursuant to Penal Code section 995.

Nzolameso moved to suppress the blood test. At the hearing on the motion at which Officers Fields and Kim testified, Nzolameso stipulated that he was lawfully arrested and had been properly advised of the implied consent law, and that he had consented to a blood test. Nzolameso's sole argument was that the police were required to obtain a warrant to draw his blood. Relying on *Birchfield*, Nzolameso argued he did not freely and voluntarily consent to the blood draw because he faced criminal

4

penalties if he refused.  The trial court determined Nzolameso did not face any criminal prosecution for failing to comply with California's implied consent law.  The trial court also found, after looking "at all of the factors" and "under the totality of the circumstances," that Nzolameso freely and voluntarily consented to the blood draw.  The court denied the motion.

Nzolameso pled nolo contendere to count 2, admitted he caused great bodily injury to two victims, and admitted he suffered two prior DUI convictions.  The court sentenced Nzolameso to 10 years in prison, consisting of four years on count 2, plus three years on each of the great bodily injury enhancement allegations.

Nzolameso timely appealed.

## DISCUSSION

Nzolameso's sole argument on appeal is that the trial court erred in denying his motion to suppress the blood test because the Fourth Amendment required law enforcement to obtain a warrant before taking a sample of his blood.  Nzolameso argues California's former implied consent law, which was amended after his conviction, made his failure to submit to a blood draw subject to mandatory imprisonment upon a DUI conviction and therefore invalidated his consent.  We agree there can be no implied consent to a warrantless blood draw upon threat of criminal penalty, but disagree with Nzolameso's contention that *Birchfield* mandates that we invalidate his actual consent.

A.  The Warrant Requirement

The first issue in *Birchfield* was whether the Fourth Amendment permits warrantless blood alcohol chemical testing incident to an arrest for drunk driving.  (*Birchfield, supra*, 136 S.Ct. at pp. 2166–2167.)  The *Birchfield* court considered

5

three consolidated cases: two involving a North Dakota law requiring drunk drivers to submit to warrantless blood tests or face misdemeanor prosecution for refusing the test; and one in Minnesota which requires a breath test and threatens criminal prosecution upon refusal to consent. (*Id.* at p. 2170.) As the Court noted, "success for all three petitioners depends on the proposition that the criminal law ordinarily may not compel a motorist to submit to the taking of a blood sample or to a breath test unless a warrant authorizing such testing is issued by a magistrate." (*Id.* at p. 2172.)

The Court began with a recap of its jurisprudence—that taking a blood sample or administering a breath test is a search governed by the Fourth Amendment and that a search warrant must be secured unless an exception to the warrant requirement applies. (*Birchfield, supra,* 136 S.Ct. at p. 2173.) The Court held that a breath test comes within the categorical search-incident-to-arrest exception to the warrant requirement. It held that, as in all cases involving reasonable searches incident to arrest, a warrant is not needed. (*Id.* at p. 2185.) Thus, the Minnesota arrestee who refused the warrantless breath test was out of luck. (*Id.* at p. 2186.)

As to blood tests, however, the Court held a warrant is required. (*Birchfield, supra,* 136 S.Ct. at pp. 2184, 2186.) In reaching "a different conclusion with respect to blood tests," the Court found that "[b]lood tests are significantly more intrusive, and their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test." (*Id.* at p. 2184.) The Court found no satisfactory justification for demanding the more intrusive alternative without a warrant. (*Ibid.*) Thus, the North Dakota arrestee who refused a

6

warrantless blood test had his conviction for refusing the test reversed.  (*Id.* at p. 2186.)

B.  The Consent Exception to the Warrant Requirement

Having found that blood tests require a warrant, the next step was to determine whether any exception to the warrant requirement applied.  A defendant's free and voluntary consent to a blood draw constitutes an exception to the Fourth Amendment search warrant requirement.  (*People v. Elder* (2017) 11 Cal.App.5th 123, 131.)  It is well established that a search is reasonable when the subject consents and that sometimes consent to a search need not be express but may be fairly inferred from context.  (*Birchfield*, *supra*, 136 S.Ct. at p. 2185.)  As to the remaining arrestee in *Birchfield* who had actually agreed to take the blood test, the state court had found *implied* consent only based on the erroneous assumption that the state could compel both blood and breath tests.  The Court found that motorists cannot be deemed to have consented to blood tests on pain of committing a criminal offense.  (*Id.* at p. 2186.)  The finding of implied consent, then, was erroneous.  Because *actual* consent had not been adjudicated, the Court remanded the consent issue so the state court could evaluate the voluntariness of the actual consent under the totality of the circumstances test set out in *Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 227, 249–250. (*Birchfield,* at p. 2186.)

*Birchfield* therefore prohibits a court from finding *implied* consent where an arrestee's only choice is to consent to a warrantless blood test or be prosecuted for refusing to do so.  Any consent obtained by law enforcement cannot be *deemed* valid where the only choice is consent to the blood test or be punished criminally.  Here, however, that was not Nzolameso's only choice.

7

Under California's former implied consent law, Nzolameso was given a choice of tests to choose from. He was subject to criminal penalties only if he refused *all* options (breath, blood, urine). Under *Birchfield*, the state of California was not insisting on only the more intrusive alternative of a blood test. Instead, it offered Nzolameso an array of less intrusive alternatives. He was not required to take the blood test or face criminal prosecution; he was required only to choose between alternative tests. Only refusing all tests would have exposed him to criminal penalties under the law. As the First District stated in *People v. Gutierrez* (2018) 27 Cal.App.5th 1155, review granted January 2, 2019, S252532 (*Gutierrez*), just because "the state cannot *compel* a warrantless blood test does not mean that it cannot *offer* one as an alternative to the breath test that it clearly can compel." (*Id.* at p. 1161.)[3] Hence, *Birchfield* does not prohibit a finding of implied consent under California's former law under these circumstances.

Here, however, we need not rest our affirmance only on the former implied consent law. The trial court held a hearing on the issue of actual consent and found consent to be voluntary. The voluntariness of a consent is to be determined in the first instance by the trier of fact. On appeal all presumptions favor the proper exercise of that power and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence. (*People v. James* (1977) 19 Cal.3d 99, 107.)

---

[3]     Review was granted in *Gutierrez* on whether law enforcement violates the Fourth Amendment by taking a warrantless blood sample from an unconscious defendant, or can the defendant be deemed to have given implied consent under California's implied consent law?

8

As set out above, both arresting officers testified to the circumstances under which Nzolameso gave his consent to the blood test. There was no testimony at all from Nzolameso, including no testimony that he only gave actual consent because of the threat of criminal prosecution. The court used the totality of the circumstances test and found, after looking at all factors, that Nzolameso freely and voluntarily consented to the blood test, despite the admonition he was given. Substantial evidence supports the trial court's findings.

Nzolameso does not challenge the factual bases of the trial court's findings except to insist that actual consent can never be found where the defendant faces the threat of criminal prosecution if he refuses. There is simply no language in *Birchfield* suggesting that an implied consent law with criminal penalties attached eviscerates the possibility of finding actual consent. If that were the case, the third arrestee in *Birchfield* would not have been accorded a remand on the issue of actual consent.

C. The Recent Amendment of The Implied Consent Law

Nzolameso also argues that the Legislature's decision to amend California's implied consent law in response to the *Birchfield* decision "strongly indicates" that Nzolameso could not have freely and voluntary consented to the warrantless blood draw based on the former law, which was in effect at the time of his arrest. We are not convinced.

Assembly Bill No. 2717 (Assem. Bill 2717) amended California's implied consent laws by clarifying that criminal penalties do not attach to a suspected drunk driver's refusal to submit to a blood test. In pertinent part, Vehicle Code section 23612 stated that drivers were deemed to have given

9

consent to chemical testing of their blood or breath; and that failure to submit to such chemical testing would result in both civil and criminal penalties upon conviction of drunk driving. (Veh. Code, § 23612, subd. (a)(1)(A) & former subd. (a)(1)(D).) Former law also stated that the person lawfully arrested for drunk driving shall be advised that he or she has the choice of submitting to blood or breath testing. (Veh. Code, § 23612, subd. (a)(2)(A).)

Current law states that drivers are deemed to have given consent to chemical testing of their blood or breath; that failure to submit to the required *breath* testing will result in civil and criminal penalties; and that failure to submit to *both* breath or blood testing will result in civil penalties only. (Veh. Code, § 23612, subds. (a)(1)(A) & (D).) The provision stating a person lawfully arrested for drunk driving shall be advised that he or she has the choice of submitting to blood or breath testing remains the same. (Veh. Code, § 23612, subd. (a)(2)(A).)

Nowhere in the summaries of analysis of Assem. Bill 2717 does the Legislature express concern that the former implied consent laws were unconstitutional. Rather, the legislative history reveals that Assem. Bill 2717 was intended to comply, comport, or be in conformity with *Birchfield* by clarifying that no criminal penalty will attach to a driver's refusal to submit to a blood test only. (Legis. Counsel's Dig., Assem. Bill No. 2717 (2018 Reg. Sess.); Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2717 (2017–2018 Reg. Sess.).)

Nevertheless, even if the Legislature were concerned that the former implied consent laws ran afoul of the Fourth Amendment, our analysis would not change because, as discussed

10

above, Nzolameso gave *actual* consent to the blood draw. Again, *Birchfield* does not render invalid a suspect's actual consent to a warrantless blood draw.[4]

Here Officer Fields informed Nzolameso that he could choose a breath or blood test. He was told that no sample would be retained from a breath test; accordingly, he could provide a blood test in order to retain a sample for testing should he be criminally prosecuted. The only consequence Nzolameso would have faced had he chosen a breath test instead of a blood test was the loss of evidence that may or may not have benefitted him in a prosecution. *Birchfield* made clear that its holding barring warrantless blood tests on pain of criminal penalty should not be read to "cast doubt" on the constitutionality of "implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply" with blood tests. (*Birchfield, supra*, 136 S.Ct. at p. 2187.)

At the time of his arrest, Nzolameso faced no threat of criminal penalties for refusing a blood test only. That he chose a blood instead of a breath test does not render the warrantless blood draw in his case unconstitutional.

---

[4]     Not only does Nzolameso ask us to construe *Birchfield* as eviscerating the possibility of actual consent, he is essentially asking us to analyze his case as if the implied consent law as applied to him involved only a blood test. Not only would this be error, it would lead to an absurd result. Under Nzolameso's reasoning, a driver could actually consent to the blood test instead of the breath test and then successfully move to suppress the results to avoid criminal prosecution entirely.

**DISPOSITION**

The judgment is affirmed.

**CERTIFIED FOR PUBLICATION**


STRATTON, J.


We concur:




BIGELOW, P. J.




GRIMES, J.